**SO ORDERED: March 27, 2012.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:  JUDITH ANN PETERS<br>SSN: ***-**-7936<br>Debtor | CASE NO. 011-04454-AJM-7<br>Chapter 7 |
| SANDRA ALVAREZ,           )<br>                                           )<br>      Plaintiff,              )<br>                                           )<br>vs.                                    )<br>                                           )<br>JUDITH ANN PETERS,    )<br>                                           )<br>Defendant.                      ) | Adv. Proc. No. 11-50182 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Sandra Alvarez ("Alvarez") filed her Motion for Summary Judgment against Judith Ann Peters ("Peters") on December 22, 2011, claiming that the debt Peters owes Alvarez is nondischargeable. Peters failed to respond to Alvarez's Motion for Summary Judgment. The parties waived argument on the Motion. The Court, having reviewed the evidence designated by

Alvarez and her memorandum in support, hereby enters the following findings of fact and conclusions of law:

## Findings of Fact

1.    Alvarez and Peters met some time in 2007 and discussed opening a restaurant.

2.    On June 6, 2008, the parties opened Main Street Bistro in Atlanta, Indiana.

3.    Prior to opening the restaurant, Alvarez provided Peters with her Capital One business credit card to complete purchases for the restaurant.

4.    Peters admitted that, "[o]n January 25, 2008, and continuing to July 21, 2008, Peters used Alvarez's credit card without Alvarez's authorization or consent in violation of Indiana Code § 35-43-5-4 to charge personal and household items for the sole benefit of Peters."

5.    After a bench trial conducted on June 14, 2010, the Hamilton Superior Court, Cause No. 29D03-0810-PL-001289, on July 29, 2010, entered its Finding and Judgment on Complaint and Counterclaim ("Judgment") on all claims and counterclaims, including Alvarez's claims under I.C. § 34-24-3-1, and awarded Alvarez a judgment in the amount of $24,702.45, plus interest at the statutory rate until paid in full.

6.    On November 10, 2010, Peters pled guilty to one count of fraud under Indiana Code § 35-43-5-4(1)(A) relating to the unauthorized use of Alvarez's credit card in the case of *State v. Peters*, Cause No. 29D01-1006-FD-002995 (the "Criminal Judgment")."

7.    As part of the Criminal Judgment, Peters was ordered to pay restitution to Alvarez in the amount of $3,112.80.

## Conclusions of Law

1.    Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a "party may move for…[and t]he court shall grant summary judgment if the movant shows that there is no

2

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In the parties' joint Pretrial Statement they represented to this Court that there are no genuine issues as to the material facts relied upon in this motion. Thus, as a matter of law, Alvarez is entitled to summary judgment that the full debt owed to her by Peters should be nondischargeable because (1) the state courts' two findings of fraud under state law meet the definition of "actual fraud" under 11 U.S.C. §523(a)(2)(A); (2) Peters is collaterally stopped from challenging the findings of fraud because of the prior two judgments; and (3) treble damages and attorneys' fees awarded in connection with findings of fraud are nondischargeable.

    2.    "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Accordingly, 11 U.S.C. § 523(a)(2)(A) excepts from discharge "any debt….for money [or] property…to the extent obtained by….false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (2010).

    3.    "To prove nondischargability under [11 U.S.C.] § 523(a)(2)(A) for 'actual fraud,' the creditor must prove by a preponderance of the evidence: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *In re White*, 444 B.R. 887, 896 (Bankr. S.D. Ind. 2010) (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000); *In re Hanson*, 428 B.R. 475, 487 (Bankr. N.D. Ill. 2010)).

    4.    Peters' fraud against Alvarez has been established in two separately concluded legal proceedings and has been admitted by Peters in this case. On July 29, 2010, the Hamilton Superior Court found that Peters violated Ind. Code §35-43-5-4 and awarded Alvarez damages,

3

treble damages, and attorneys' fees. Similarly, on November 10, 2010, Peters pled guilty to one count of fraud under Ind. Code § 35-43-5-4(1)(A) relating to her unauthorized use of Alvarez's credit card. Additionally, in the Agreed Statement of Undisputed Facts filed by the parties in their Pretrial Statement with this Court, Peters admits that she violated Ind. Code § 35-43-5-4.

    5.    Following this Court's prior ruling in *In re White*, Peters' fraud under Ind. Code § 35-43-5-4 is deemed "actual fraud" for purposes of 11 U.S.C. § 523(a)(2)(A).

    6.    To determine whether Peters' activities constituted "actual fraud" under § 523(a)(2)(A), this Court applies the broad definition of fraud set forth by the Seventh Circuit Court of Appeals in *McClellan v. Cantrell*:

> Fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*In re White*, 444 B.R. at 896 (quoting *McClellan*, 217 F.3d at 893). Using *McClellan's* broad definition, this Court held that fraud had occurred for purposes of 11 U.S.C. 523(a)(2)(A) because the check fraud statute required that the defendant "obtain property through a scheme or artifice with intent to defraud." *In re White*, 444 B.R. at 896. Likewise, applying *McClellan's* broad definition, this Court now finds that the the Judgment, the Criminal Judgment, and Peters' own admission in the Pretrial Statement clearly establish the first element, "that fraud occurred," has been met.

    7.    When addressing the second element for "actual fraud" - that the debtor intended to defraud the creditor - this Court in *In re White* held that Indiana's check fraud statute clearly requires an analogous intent to defraud. *In re White*, 444 B.R. at 896. The statute at issue in this

case is nearly identical to the statute analyzed in *In re White*. Both Ind. Code § 35-43-5-12(b)(1)(A), which was at issue in *White* and Ind. Code § 35-43-5-4(1)(A), which is at issue in this case, make it a crime to "obtain property" "with intent to defraud" and "knowing[ ]" that either "the check will not be honored" or that "the credit card was unlawfully obtained or retained" In fact, the wording regarding the intent element in both the check fraud statute and the fraud statute is identical, "with intent to defraud." *See* Ind. Code § 35-43-5-4(1)(A); and Ind. Code § 35-43-5-12(b)(1)(A). Therefore, the Indiana fraud statute clearly requires intent, which satisfies the second element of the § 523(a)(2)(A) "actual fraud" test. *In re White*, 444 B.R. at 896.

8. With regard to the third element for nondischargeability - the fraud that created the debt was the subject of the dispute - the Court concludes that Peters obtained property through her fraud when she used Alvarez's credit card without permission. Consequently, all three elements necessary to prove nondischargeability have been established, and Alvarez is entitled to summary judgment.

9. Furthermore, the theory of collateral estoppels requires this Court to find that the debt Peters owes Alvarez is nondischargeable. Pursuant to the U.S. Constitution's Full Faith and Credit Clause, a federal court must give the Judgment and the Criminal Judgment the same preclusive effect they would be given under the laws of the State of Indiana. U.S. Const., Art. IV, § 1; *In re White*, 444 B.R. at 891 (citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984)). Indiana law recognizes collateral estoppel. *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993). Though nondischargeability is exclusively a question of bankruptcy law, the U.S. Supreme Court has held "that collateral

estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 284-285 (1991).

10. Under Indiana law, in order to invoke collateral estoppel, a party "must make a threshold showing that (1) the issue in the current action is identical to that in the prior action; (2) the issue was actually litigated; (3) the resolution of the issue in the first action was necessary to the judgment and (4) a final judgment determined the issue in the prior action." *In re White*, 444 B.R. at 892.

11. In this case, collateral estoppel with regard to the Judgment is being used offensively. Indiana has adopted the *Parklane Hosiery* test for determining whether a plaintiff should be permitted to use collateral estoppel offensively. *See Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).

12. In determining whether to permit a plaintiff to use collateral estoppel offensively, Indiana courts consider: "(1) whether the party against whom the former adjudication is sought had a full and fair opportunity to litigate the issue and (2) whether it would be otherwise unfair under the circumstances to permit the use of issue preclusion in the subsequent suit." *In re White*, 444 B.R. at 892 (citing *Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d at 1038).

13. This Court held in *In re White* that White had a full and fair opportunity to litigate despite the fact that the state court judgment was entered following an unopposed motion for summary judgment. *In re White*, 444 B.R. at 893-894. This Court stated that that the standard is the "opportunity" to litigate and that the standard does not require that the litigant "put in his best case on the point during the first go-around." *Id.* at 894 (citations omitted). In the case at hand, it cannot be denied that Peters had the "opportunity" to litigate in both the civil and criminal

6

actions. Peters did in fact litigate and lose in the Civil Case. Although Peters pled guilty in the Criminal Case, she was not deprived of the "opportunity" to litigate. Accordingly, Peters had the "full and fair opportunity to litigate the issue" in both the Civil Case and Criminal Case.

14. In addition to determining whether Peters had the opportunity to litigate, this Court must evaluate whether the use of collateral estoppel against Peters would be unfair. The court in *Tofany* provided a non-exhaustive list of factors a court can consider, within the court's broad discretion, when deciding whether the offensive use of collateral estoppel would be fair. *Tofany*, 616 N.E.2d at 1038-1039. The factors include the defendant's incentive to litigate, including the interest at stake for the defendant and the defendant's perception of this interest, and the defendant's ability to defend the prior action. In the actions at issue, Peters had a great incentive to litigate. *Id.* In the Civil Case, Peters had incentive to litigate because Alvarez was seeking treble damages and attorneys' fees. Peters also had incentive to litigate her counterclaims. Peters' perception of this interest can be gleaned from her participating in a trial on the merits on the claim. Peters' actions show a much greater perception of her interest as compared to the defendant in *In re White* who failed to respond to the motion for summary judgment.

15. With regard to the criminal action, Peters had great incentive - her liberty - to litigate that case. The court in *Doe v. Tobias* discussed the fact that many of the unfairness factors relevant in a civil action are inapplicable in a criminal action. *Doe v. Tobias*, 715 N.E.2d 829, 832 (Ind. 1999). Short of the defendant presenting evidence of ineffectiveness of counsel, unfairness associated with the problems of offensive collateral estoppel do not apply. *Id.* at 832-33. In her criminal action, Peters had every incentive to litigate, and she has not submitted any

7

evidence of ineffectiveness of counsel. Therefore, applying collateral estoppel offensively against Peters in this case is in no way unfair to her.

16. Collateral estoppel with respect to Peters' guilty plea is governed differently. Under Indiana law, "evidence of a final judgment resulting from a full trial or a plea bargain is admissible in a civil action to prove any fact essential to the judgment so long as the criminal conviction was for a felony." *State Farm Fire and Cas. Co. v. Miles*, 730 F. Supp. 1462, 1466 (S.D. Ind. 1990). The admissibility of Peters' plea is not an issue in this case, however, because Peters has freely admitted that she pled guilty to felony fraud under Ind. Code § 35-43-5-4(1)(A) in the Pretrial Statement.

17. The Indiana Supreme Court has held that a criminal conviction "may potentially provide a basis for the offensive use of collateral estoppel." *Doe v. Tobias*, 715 N.E.2d 829, 831 (Ind. 1999) (quoting *Kimberlin v. DeLong*, 637 N.E.2d 121, 125 (Ind. 1994)). As when the prior action was a civil action, the Supreme Court held that when the prior action is a criminal action, the trial court, in its broad discretion in evaluating the fairness of offensive collateral estoppel, "is to consider the *Parklane/Tofany* factors together with any other factors that bear on fairness, and determine whether the use of offensive collateral estoppel is unfair." *Doe v. Tobias* at 833.

18. In this case, it is not unfair to apply collateral estoppel against Peters. She had an incentive and did litigate to a plea agreement. She had significant interest at stake to litigate. Therefore, collateral estoppel should be applied.

19. In the Civil Case, Alvarez was awarded $49,739.52 against Peters, and Peters was awarded $25,037.07 against Alvarez which resulted in the final judgment in favor of Alvarez of $24,702.45. A large portion of this $49,739.52 was treble damages and attorney fees.

The Court also finds that the treble damages and attorneys' fees components of the debt to Peters are non-dischargeable. These awards were pursuant to Ind. Code § 34-24-3-1, which provides:

> Ind. Code § 34-24-3-1
> **Offenses against property; recovery of damages, costs, and attorney's fee**
> Sec. 1. If a person…suffers a pecuniary loss as a result of a violation of Ind. Code § 35-43, the person may bring a civil action against the person who caused the loss for the following:
>     (1) An amount not to exceed three (3) times:
>         (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5…
>     (2) The costs of the action.
>     (3) A reasonable attorney's fee…

Ind. Code § 34-24-3-1.

20.     Though it can be argued that the treble damages and attorneys' fees portions of the debt were not obtained by "actual fraud" as required under § 523(a)(2)(A); the United States Supreme Court has held that treble damages and attorneys' fees that are included within the relief resulting from the fraud are also be nondischargeable:

> the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses any liability … that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

*Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998). Like the award in the Civil Case, the award in *Cohen* followed a bench trial in which the court ruled against the debtor and awarded treble damages and attorney's fees pursuant to the New Jersey Consumer Fraud Act. *Id.* at 215-216. The Supreme Court held that the entire amount of the debt, which included treble damages and attorney's fees and costs, was nondischargeable in bankruptcy. Accordingly, the state court's award of treble damages and attorney's fees in this case is likewise nondischargeable under 11 U.S.C. § 523(a)(2)(A).

9

21.     The court in the Civil Case calculated Alvarez's damages at $13,189.50. The Court in the Civil Case determined that Alvarez was entitled to treble damages on the core amount of $13,189.50 which amounted to $39, 568.50. Alvarez also incurred $10,171.02 in attorney fees for a total judgment, before setoff, of $49,739.52. The court in the Civil Case also found that Peters' damages resulting from the acts of Alvarez and her agent were $5,265.69. This core amount was also trebled which amounted to $15,797.07, which, along with Peters' attorney fees of $9,240, amounted in a total judgment against Alvarez of $25,037.07. When Alvarez's judgment against Peters ($49,739.52) is setoff against Peters' judgment against Alvarez ($25,037.07), the result is a judgment in favor of Alvarez in the amount of $24,702.45.

22.     Pursuant to 11 U.S.C. § 523(a)(2)(A), Peters' debt to Alvarez is nondischargeable because it was procured by civil and criminal fraud as determined by the Hamilton Superior Court and the Hamilton Superior Criminal Court in separate proceedings. There are no genuine issues of material facts, and Alvarez is entitled to summary judgment as a matter of law. There is no just reason for delay, and final judgment in the amount of $24,702.45 is entered in favor of Alvarez and against Peters.

###